**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RONNIE FRANKLIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-1106 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Ronnie Franklin ("Franklin") seeks judicial review of Acting Commissioner of the Social Security Administration's ("the Commissioner") decisions denying his application for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act ("the Act"), respectively. The Parties consented to have this Court decide the matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. As explained below, the Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner's motion, and **DISMISSES** the action **with prejudice**.

1

# I. BACKGROUND

## A. Procedural Background

On January 3, 2013, Franklin filed an application under Title II for disability insurance benefits, 42 U.S.C. §§ 401-34, and under Title XVI for supplemental security income ("SSI") benefits, *id.* §§ 1381-83, ging disability beginning April 1, 2011, due to heart problems. R. 11.[1] The Commissioner denied these claims initially and on reconsideration. *Id.* Franklin then requested an administrative hearing before an administrative law judge to review the denial of benefits. *Id.* Administrative Law Judge D'Lisa Simmons ("the ALJ") held a hearing on April 18, 2014. R. 11, 29-51. Franklin and a vocational expert appeared and testified. On August 22, 2014, the ALJ issued a decision, finding no disability under §§ 216(i) and 223(d) of Title II and § 1614 of Title XVI of the Act. R. 11-26. On February 10, 2016, the Appeals Council denied Franklin's request for review, rendering the ALJ's decision final. R. 18-23; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

Franklin then filed his complaint in this case, seeking judicial review of the Commissioner's denial of his Title II and Title XVI claims for benefits. Compl.,

---

[1] "R." references are to the Administrative Transcript/Record filed by the Commissioner. ECF No. 4.

ECF No. 1; *see* 42 U.S.C. §§ 405(g), 1383(a)(2)(B)(xi) (providing for judicial review of the Commissioner's final decisions in disability insurance benefits and supplemental security income benefits, respectively). Franklin argues that the ALJ erred in determining Franklin's residual functioning capacity ("RFC") by failing to include certain mental and physical limitations. Pl. Mot. Summ. J., pp. 6-10, ECF No. 17.

## B.    Factual Background

Franklin claims that he suffers from both a physical and mental disability. In his applications for disability benefits,[2] Franklin stated that he was suffering from heart problems with an alleged onset date of April 1, 2011. R. 11, 154, 183-87.[3] In his application, Franklin stated that his weak heart muscle causes him to become exhausted easily. R. 246. Franklin also noted that he previously had surgeries on his neck and heart. R. 192-93, 218. Franklin stated he had previously worked as a safety inspector, flagman, wood sculpture, and bulldozer operator. R. 20, 196, 207-11. Franklin stated that he stopped working on April 1, 2011, because of his conditions. R. 187.

---

[2] The Court refers to disability benefits in this opinion as including disability insurance benefits and supplemental security income benefits.

[3] Franklin did not claim mental limitations in his application. *See* R. 187.

3

After the hearing, the ALJ issued a twelve-page opinion. R. 11-26. The ALJ reviewed Franklin's medical records and provided a summary of his medical conditions. The relevant portions of his medical history are summarized below and discussed later in this opinion.

Franklin has been diagnosed with various heart conditions, including, ischemic cardiomyopathy (restriction in blood supply), coronary artery disease (tightening and narrowing of arteries), angina (chest pain), hypertension (high blood pressure), and a prior atrial myxoma (benign tumor). R. 286. The medical records submitted to the ALJ show that Franklin saw a cardiologist, Dr. Siropaides, at the Cardiovascular Association from February, 2012, until September 2013, R. 392-465, and various doctors at Kingwood Medical Center between August 2011 and January 2014. R. 298-381, 466-660.

The records indicate that Franklin first saw Dr. Siropaides at the Cardiovascular Association on February 13, 2012. R. 395. Over the next eighteen months, Dr. Siropaides monitored Franklin's heart with stress tests, imaging, laboratories tests, and echocardiograms (ultrasounds). *E.g.*, R. 397-99, 403, 418. Frequently when Franklin visited Dr. Siropaides, he did not complain of chest pain. *E.g.,* R. 406, 426, 435, 436, 438. Dr. Siropaides also prescribed Franklin medications and refilled them as needed, including Xanax, Metoprolol Tartrate,

aspirin, Livalo, Plavix, Zetia, Micardis, and over-the-counter Prilosec. *E.g.,* R. 396, 407, 415-16. These medications were used to treat Franklin's high blood pressure, cholesterol, and to act as blood thinners. Apparently, Dr. Siropaides proscribed the Xanax to treat Franklin's anxiety, but were no notations or reports indicating any treatment other than proscribing Xanax related to Franklin's anxiety.

Franklin also went to the Kingwood Medical Center every few months with complaints of pains in his chest, hip, neck, jaw, abdomen, and hemorrhoids. *E.g.,* R. 325, 370, 466, 524, 611. The hospital monitored Franklin's heart and consulted with Dr. Siropaides at the Cardiovascular Association. The doctors took x-rays of his chest and heart, and conducted EKGs, echo and stress tests. *E.g.*, R. 313, 368-69, 374-77, 466. Franklin had no active diseases of the heart and no evidence of acute cardiopulmonary process (sudden effect on the heart), pulmonary embolism (blood clots in the leg), acute infiltrates (thick substance in the lungs), shortness of breath, labored breathing, paroxysmal, lower extremity swelling, or heart palpitations. R. 359, 374-77. Further, during a stress test and its recovery portion, Franklin exhibited no cardiac symptoms. R. 443. At each visit, Franklin was released the same day with a medicine-based treatment plan.

Franklin also went to the Conroe Regional Medical Center on October 16, 2012. R. 282-97. He complained of chest pain and was examined with an EKG and

ultrasound. His heart size and lungs were normal. Although he had a left bundle-branch block, a Doppler ultrasound study was unremarkable and he was negative for any inducible ischemia. R. 18-19, 283-84. During an EKG, Franklin appropriately responded to exercise, and his resting EKG and functional capacity were normal. R. 295. Further, his cardiac enzymes were normal, indicating no injury to the heart. R. 284. The doctors treated Franklin with nitroglycerin and prescribed him with the same medication as Dr. Schaeffer at Kingwood Medical Center. *Id.*

Franklin also underwent three surgeries in relation to his heart. On June 21, 2012, Franklin underwent a coronary angioplasty (surgical repair of his blood vessel), stent placement, and balloon angioplasty. R. 365-67. The surgery was deemed a success and the plan of action was to treat Franklin's heart conditions with long-term aspirin and Plavix therapy along with aggressive blood pressure and lipid control. *Id.* On September 16, 2013, Franklin underwent a left heart catheterization and angio-seal closure device procedure. R. 493-94. The doctor also examined Franklin's artery with a radiography and cineangiography. R. 493. This surgery was deemed successful and the plan of action was aggressive medical therapy. R. 494. Franklin was examined a week later and had normal valve structures. R. 465. On August 5, 2014, Franklin underwent another left heart

catheterization and angio-seal closure device procedure. R. 713-16. The doctor also took an x-ray to examine Franklin's heart. *Id.* This surgery was deemed successful and the recommended treatment plan was to optimize medical management for Franklin's coronary artery disease. R. 716.

Before his last two surgeries, on April 30, 2013, at the request and expense of the Department of Assistive and Rehabilitative Services ("DARS"), Dr. Farzana Sahi conducted a consultative examination of Franklin. R. 384-91. Dr. Sahi noted that Franklin was diagnosed with myocarditis (inflammation of the heart muscle), myxoma, frequent premature ventricular contractions, and shortness of breath. R. 384. Franklin complained of sharp chest pain that occurred once a week, but he did not take medication for it. *Id.* Franklin also complained of neck, back, and shoulder pain. *Id.* Franklin noted that he had surgery on his neck in 2008. *Id.* Franklin indicated that he was able to walk half a mile, stand and sit for thirty minutes, lift ten pounds, and had difficulty bending and opening a jar top. *Id.*

Dr. Sahi examined Franklin and found that he was positive for chest extremity, and chest pain and dizziness, but negative for palpitation, syncope (temporary loss of consciousness caused by a fall in blood pressure), and shortness of breath. R. 385-86. Dr. Sahi found that Franklin was tender in his neck and had a decreased range of motion in his neck, but he was negative for neck pain. *Id.* Dr.

Sahi found that Franklin was able to squat and arise from a squatting position, and bend and touch his fingertips within three inches of the floor without difficulty. *Id.* Dr. Sahi observed no spine or costovertebral angle tenderness, and his thoracic spine and lumbar spine were non-tender and Franklin's range of motion was good. *Id.* Dr. Sahi also observed no edema (swelling) in the extremities and a normal range of motion. *Id.*

Dr. Sahi concluded that Franklin suffered from chest pain based on moderate exertion, Franklin's neck pain appeared to be from degenerative disc disease, and Franklin's back and shoulder examination were normal. R. 387. Dr. Sahi opined that Franklin was able to sit long periods of time, stand and walk for moderate distances, and do moderate lifting. *Id.* The ALJ gave Dr. Sahi's opinion great weight because it was consistent with the totality of the medical evidence. R. 20.

Franklin did not report any anxiety issue, and Dr. Sahi did not find any symptoms in relation to anxiety. *See* R. 384-87. Dr. Sahi noted that Franklin's psychiatric symptoms were negative for depression, suicidal ideation, and hallucination. R. 385.

The ALJ also reviewed and summarized the opinions of two State Agency Medical Consultants ("SAMC"): Dr. Reid, dated May 14, 2013, and

Dr. Rosenstock, dated August 19, 2013, R. 52-71, 72-93.[4] Drs. Reid and Rosenstock both opined that Franklin was capable of working at a light exertional level with no postural, manipulative, communicative, visual, or environmental limitations. R. 19-20. Dr. Reid found that although Franklin alleged that he was diagnosed with a general anxiety, his activities of daily living "show no limitations as a result of any mental impairment, [Franklin] does not complain of any mental health issues, [and] that he has limitations to his physical health issues only." R. 55, 64. Dr. Rosenstock similarly opined that Franklin's anxiety disorder "may restrict [Franklin] but appear[s] to impose minimal limitations." R. 77, 87. The ALJ gave the SAMCs' opinions great weight because they were consistent with the totality of the medical evidence. R. 20.

The ALJ found that Franklin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that his subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms were credible. However, she noted that the medical evidence and his activities of daily living did not support his statements. R. 20.

The ALJ summarized the relevant medical records. The medical evidence about Franklin's heart indicated that, although his ejection fraction of one artery

---

[4] No psychological or mental health review was done by either SAMC. *See* R. 52-71, 72-93.

was stable at forty percent, he had normal valve structures. R. 18. He had no active disease, acute cardiopulmonary process, pulmonary embolism, or acute infiltrates. R. 18. His heart and lung were normal sizes, had normal resting EKG and cardiac enzymes results, and also responded normally to exercise. R. 18-19. Franklin testified that he was able to do household chores, walk a quarter of a mile, and lift/carry thirty and forty pounds. R. 18, 38-40. At a recent examination, he stated that he did not suffer from shortness of breath, lower extremity, or exertional chest pain. R. 19. The examining doctor found no signs of an acute coronary syndrome (condition associated with reduced blood flow to the heart) or myocardial infraction (heart attack). R. 19. With respect to Franklin's back and neck, the ALJ found that he had a normal physical examination with a normal range of motion and no evidence of edema in the extremities. R. 19.

The ALJ assessed Franklin as having the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[5] with added limitations. R. 17. The ALJ did not include any mental limitation based upon his general anxiety disorder. *See id.* She found that the medical records combined with Franklin's daily living activities supported the RFC finding. R. 17-20.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(c), 416.967(c).

The ALJ found that, given his assessed RFC, Franklin was unable to perform his past relevant work, but that there are jobs that exist in significant numbers in the national economy that Franklin could perform, including a storage facility rental clerk, mail clerk non-postal, and telephone survey worker. R. 20-22. As a result, the ALJ concluded that Franklin was not disabled. *Id.*

After the ALJ's decision, Franklin appealed the decision to the Appeals Council. Franklin submitted medical records detailing a June 19, 2007, neck surgery at Conroe Regional Medical Center. R. 689-97; *see Higginbotham v. Barnhart*, 405 F.3d 332, 336-37 (5th Cir. 2005) ("evidence submitted for the first time to the Appeals Council is part of the record on appeal because the statute itself provides that such record includes the 'evidence upon which the findings and decision complained of are based.'" (quoting 42 U.S.C. § 405(g)). On February 10, 2016, the Appeals Council denied Franklin's request for review, rendering the ALJ's decision final. R. 18-23.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 434 (5th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1083 (2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp.*, 477 U.S. at 322-23; *Bacharach*, 827 F.3d at 434. "An issue is material if its resolution could affect the outcome of the action." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal citations and quotation marks omitted). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (internal citations and quotation marks omitted).

## III.   STANDARD OF REVIEW FOR DENIAL OF DISABILITY BENEFITS

The Act sets out the standard for a district court to review a denial of disability benefits.

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commission of Social Security as to any facts, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the Commissioner applied the proper legal standards to evaluate the evidence; and second, whether substantial evidence on the record as a whole supports the final decision. *See Audler v. Astrue,* 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). It is more than a mere scintilla and less than preponderance. *Id.*; *Perez,* 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard, the court scrutinizes the record in its entirety to determine whether such evidence is present. *Perez*, 415 F.3d at 461. In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id*. at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("it is imperative that we scrutinize the record in its entirety to

determine the reasonableness of the decision reached by the Secretary and whether substantial evidence exists to support it").

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Perez*, 415 F.3d at 461 (citing *Richardson*, 402 U.S. at 390). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Audler*, 501 F.3d at 447. In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez*, 415 F.3d at 461. The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler*, 501 F.3d at 448.

## IV.    ANALYSIS

### A.    Titles II and XVI of the Act Authorize Disability Insurance Benefits and Supplemental Security Income

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance

benefits. The Act also permits SSI payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct, applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (Hanks, J.) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

"Disability" is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as

> an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. § 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging

in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)).

## B.    Franklin Must Establish That He Was Disabled

The Act places the burden of establishing disability on the claimant. *Perez*, 415 F.3d at 461. To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (Atlas, J.) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir.1999), and 20 C.F.R. § 416.335).

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a "severe" impairment, such that it has more than minimal limitation in the claimant's ability to perform basic work activities; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix I of the regulations; (4) what constitutes past relevant work and whether the claimant is capable of performing it; and (5)

whether the claimant is capable of performing any other work in the national economy. *Copeland*, 771 F.3d at 923; *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. Before proceeding to Step Four, the ALJ makes an assessment of the claimant's RFC, which is a generic description of the work a claimant still can do despite his or his physical and mental limitations. *Perez*, 415 F.3d at 461-62. Then, the ALJ compares the assessed RFC to the plaintiff's past relevant work in Step Four and, if needed, to jobs in the national economy in Step Five. *Id.* at 461.

The claimant has the burden to prove disability under the first four steps. *Copeland*, 771 F.3d at 923. If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy. *Id.* Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding. *Id.*; *Newton*, 209 F.3d at 453. A finding that a claimant is disabled at any point in the five-step review is conclusive and terminates the analysis. *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)). If the Commissioner cannot make a determination, he goes on to the next step. *Id.* (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ first determined that Franklin met the insured status requirements for Title II disability insurance benefits through June 30, 2015. R. 13,

177-78. At Step One, the ALJ examined Franklin's employment and earnings history, and found that he had not engaged in substantial gainful activity since his alleged onset date. Although he had worked after the alleged disability onset date, he did not earn enough money for this employment to rise to the level of substantial gainful activity. R. 13, 182.

At Step Two, the ALJ found that Franklin had four severe impairments: ischemic heart disease with chest pain on moderate exertion, coronary artery disease (CAD), degenerative disc disease of the cervical spine, and status post anterior cervical decompression and fusion. R. 13. The ALJ also found that Franklin had several non-severe physical and mental impairments that "would not be expected to interfere with the claimant's ability to work," including, gastroesophageal reflux disease (GERD), hypertension, blood clots, congestive heart failure, obstructive sleep apnea, hyperlipidemia, hypertrophic cardiomyopathy, a history of smoking, and anxiety disorder. R. 14-16 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). Additionally, the ALJ found that Franklin's claim of arthritis in the hips was not a medically determinable impairment because there were no medical records to support this claim. R. 14-15.

At Step Three, the ALJ found that Franklin's impairments, considered singularly or in combination, did not meet the impairments listed in the Social Security regulations. R. 16-17.

Before proceeding to Step Four, the ALJ assessed Franklin's RFC and concluded that he was able to perform a wide range of light work, except that he must be able to sit/stand/walk intermittently for six hours, each, in an eight workday; be limited to occasional crouching, crawling, kneeling, and climbing stairs and ramps; not be required to use scaffolding, ropes, ladders; and not be exposed to extreme heat, respiratory irritants, dangerous machinery, or unprotected heights. R. 17. The ALJ did not include any mental limitations in the assessed RFC. *See id.*

At Step Four, the ALJ compared this assessed RFC to Franklin's past relevant work and determined that he was unable to perform his former jobs of a safety inspector, flagger, wood sculptor, or bulldozer operator. R. 20. At Step Five, the ALJ considered Franklin's advanced age, limited education, work experience, and RFC, and determined that there are jobs that exist in the significant numbers in the national economy that Franklin can perform, including, storage facility rental clerk, mail clerk non-postal, and telephone survey worker. R. 20-22. The ALJ

concluded that because Franklin was able to perform these jobs given his assessed RFC, he was not disabled. R. 22.

## C.     Substantial Evidence Supports the ALJ's Decision

In support of his motion, Franklin first asserts that substantial evidence does not support the ALJ's decision not to include any mental limitations in the assessed RFC. Pl. Mot. Summ. J., p. 6, ECF No. 17. Second, Franklin asserts that substantial evidence does not support the ALJ's decision not to include various physical limitations in the assessed RFC. *Id.* at 7-10.

### 1.     Substantial evidence supports the ALJ's finding not to include any mental limitations in the assessed RFC

#### a.     *The ALJ properly determined at Step Two that Franklin's anxiety disorder caused only mild limitations but was a non-severe impairment*

As part of his argument, Franklin asserts that it was error for the ALJ to fail to include any mental limitations in the RFC after "the ALJ acknowledge[d] that Plaintiff's mental impairments result in at least 'mild' limitations in domains of social functioning, concentration, persistence and pace, and activities of daily living." *Id.* at 6. The ALJ gave these mild ratings at Step Two when she conducted the three-part special technique used to evaluate whether Franklin's anxiety disorder was a severe or non-severe impairment. R. 16. As explained below, the ALJ properly conducted this three-part technique.

At the time of Franklin's decision,[6] the ALJ was required to evaluate at Step Two whether Franklin's mental impairment was severe pursuant to a three-part technique that evaluates "the degree of functional loss resulting from the claimant's mental impairments." *Andrews v. Astrue*, 917 F. Supp. 2d 624, 633 n.2 (N.D. Tex. 2013) (citing 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d)).

At part one, the ALJ was to determine whether the claimant had a medically determinable mental impairment. §§ 404.1520a(b)(1), 416.920a(b)(1).

At part two, the ALJ was supposed to rate the degree of the functional limitation in four areas: (A) activities of daily living; (B) social functioning; (C) concentration, persistence, or pace; and (D) episodes of decompensation. *Andrews*, 917 F. Supp. 2d at 635; §§ 404.1520a(b)(2), (c), 416.920a(b)(2), (c). The ALJ evaluates and grades the first three functional areas using a five-point scale: none, mild, moderate, marked, or extreme; and rates the fourth functional area (episodes of decompensation) using a different four-point scale: none, one or two, three, four or more. §§ 404.1520a(c)(4), 416.920a(c)(4). "The last point on each scale [extreme and four or more] represents a degree of limitation that is

---

[6] Since the hearing, 20 C.F.R. §§ 404.1520a, 416.920a have been revised and amended twice. The citations in this section are to the regulations as the existed in 2014, when the ALJ and Commissioner heard, decided, and considered the case. *See Johnson v. Barnhart*, 285 F. Supp. 2d 899, 910 n.6 (S.D. Tex. 2003) (Atlas, J.) (analyzing the regulations in place at the time of the hearing and decision and noting that they were revised and amended after the hearing date).

incompatible with the ability to do any gainful activity." §§ 404.1520a(c)(4), 416.920a(c)(4).

At part three, the ALJ was required to use the ratings to determine the severity of the mental impairment. *Andrews*, 917 F. Supp. 2d at 635; §§ 404.1520a(d), 416.920a(d). There is a presumption that the impairment is non-severe if the ALJ rates the degree of the claimant's limitation "in the first three functional areas as 'none' or 'mild,' and 'none' in the fourth area . . . ." §§ 404.1520a(d)(1), 416.920a(d)(1); *accord Andrews*, 917 F. Supp. 2d at 635. A claimant can rebut this presumption if "the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities." *Andrews*, 917 F. Supp. 2d at 635 (quoting §§ 404.1520a(d)(1), 416.920a(d)(1)). If the claimant fails to rebut the presumption, then the mental impairment is deemed non-severe. *Andrews*, 917 F. Supp. 2d at 635 (concluding that the mental impairment was non-severe because the claimant failed to rebut the presumption after finding that he "had either no or only mild restrictions in the first three functional areas, and none in the fourth").

If the ALJ finds that mental impairment is severe, she will compare the functional ratings she gave with the listed mental disorders. §§ 404.1520a(d)(2), 416.920a(d)(2). If the severe mental impairment does not meet an equivalent

listing, the ALJ will then assess the claimant's RFC given the severe impairment. §§ 404.150a(d)(3), 416.920a(d)(3).[7]

Here, the ALJ properly applied this technique to determine that Franklin's anxiety disorder was not a severe impairment. *See* §§ 404.1520a(e)(4), 416.920a(e)(4); R. 15-16. First, although not detailed in the opinion, anxiety is a medically determinable mental impairment and the ALJ properly proceeded to the second and third parts. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("anxiety disorders" are the eleventh listed mental impairment). Second, the ALJ rated the four functional areas and gave a "mild" limitation rating to the first three functional areas, and "none" in the fourth, because Franklin had experienced no episodes of decompensation. R. 15-16. Third, because the first three functional areas were only rated mild and the fourth was rated none, it was presumed that Franklin's anxiety was not severe. *See Andrews*, 917 F. Supp. 2d at 635; §§ 404.1520a(d)(1), 416.920a(d)(1).

Accordingly, the ALJ properly concluded that Franklin's anxiety disorder was not a severe impairment. *See White v. Astrue*, No. 4:08-CV-415, 2009 WL 763064, at *11 (N.D. Tex. Mar. 23, 2009) (rejecting the argument by claimant that

---

[7] The ALJ must also document her application of the technique, detailing the claimant's history, "including examination and laboratory findings," and providing a "specific finding as to the degree of limitation in each of the functional areas . . . ." §§ 404.1520a(e)(4), 416.920a(e)(4).

"the assessment of mild limitations in a claimant's functioning must translate into a finding that the claimant has a severe mental impairment"); *Andrews*, 917 F. Supp. 2d at 635 (declining to reverse the ALJ's finding that the claimant's mental impairment was not severe because the claimant had either no or only mild restrictions in the first three functional areas, and none in the fourth); §§ 404.1520a(d)(1), 416.920a(d)(1).

> b.    *Substantial evidence supports the ALJ's decision not to include any mental limitation in the assessed RFC*

"The Fifth Circuit has held that Step Two is a threshold step, requiring the 'claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to work.'" *Ventura v. Colvin*, No. 6:16-CV-16, 2017 WL 1397130, at *12 (S.D. Tex. Feb. 27, 2017) (Palermo, J.), *adopted*, 2017 WL 1397131 (S.D. Tex. Mar. 30, 2017) (Atlas, J.) (quoting *Anthony*, 954 F.2d at 294 n.5)). Franklin failed to make this *de minimis* showing as the ALJ properly found that his anxiety disorder was not a severe impairment. Franklin still contends that it was error for her not include some of the mental limitations at Step Two. Pl. Mot. Summ. J., p. 6, ECF No. 17.

In formulating the RFC, the ALJ must consider all impairments, whether severe or non-severe.[8] *Patterson v. Berryhill,* No. 3:16-CV-204, 2017 WL 1196859, at *12 (N.D. Tex. Mar. 30, 2017); §§ 404.1545(a)(2), 416.945(a)(2). Substantial evidence supports the ALJ's decision not to include any mental limitations related to anxiety in the assessed RFC.

First, there is a lack of objective evidence corroborating the severity of Franklin's claim; namely, there were no records from any treating physician regarding Franklin's mental impairments except to the extent they show he received medication for anxiety. *E.g.*, R. 396. Franklin has not demonstrated that he obtained any treatment in the way of therapy. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("The ALJ was not precluded from relying upon the lack of treatment as an indication of nondisability."); *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 321 (S.D. Tex. 2008) (Jack, J.) ("The Fifth Circuit recognizes that an ALJ may rely on lack of treatment as evidence that an applicant's subjective complaints are not credible."); *see also White*, 2009 WL 763064, at *11 (recognizing that lack of history of treatment by a mental health professional supported finding that the mental impairment was not severe). Franklin, testified that he had problems sleeping due to racing thoughts and anxiety attacks, but he

---

[8] If the ALJ does not find any severe impairment at Step Two, the inquiry stops and the claimant is found to be not disabled. §§ 404.1520(c), 416.920(c).

never sought treatment from a mental health professional, indicating that the disorder was not as severe as Franklin claimed. R. 15, 40-41; *see Olvera v. Colvin*, No. 4:14-CV-605, 2016 WL 2594066, at *8 (E.D. Tex. May 5, 2016) (considering the evidence that the claimant "never found his symptoms severe enough to seek treatment" in assessing the RFC). Franklin was taking anxiety medication as early as February 13, 2012. R. 396. When medication is sufficient to control the symptoms, the ALJ can conclude that the condition is not disabling. *See Willis v. Berryhill*, No. 4:15-CV-2070, 2017 WL 1153956, at *17 (S.D. Tex. Mar. 28, 2017) (Milloy, J.) ("an impairment that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC"); *Ventura*, 2017 WL 1397130, at *13 (little objective evidence to support claim that anxiety impacted claimant's ability to work, including that the claimant reported that the medication helped control anxiety).

Second, Franklin indicated that he was able to take care of his daily needs and interact with others, both with only mild limitation. *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) (plaintiff's self-described daily activities bolstered the medical opinions that did not restrict the plaintiff's physical activity). Franklin testified that he was able to drive in a car, shop in stores, bathe, and dress himself. R. 15, 219-22. Further, he reported in his application that he visited with

friends about three to four times a week and talked with them on the phone. R. 15, 222. Additionally, Franklin testified that he can understand written and verbal instruction and can concentrate up to twenty minutes and handle changes in routine. R. 15-16, 219.

Third, the only opinions contained in the record were from a non-treating sources: the SAMCs. The SAMCs opined that Franklin's anxiety might restrict him but his symptoms impose minimal limitations. R. 15, 52-69, 72-91. Since, the SAMCS is a non-treating physician, the ALJ was not required to give these opinions controlling weight. *See, e.g., Andrews*, 917 F. Supp. 2d at 637. But the ALJ was entitled to rely on the SAMC opinions because these doctors are "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *Ventura*, 2017 WL 1397130, at *11 ("The ALJ is required to consider the SAMC opinions because these individuals are "highly qualified" and "experts in Social Security disability evaluation." (internal citations omitted)).

Accordingly, substantial evidence supports the ALJ's decision to not include any mental limitations in the assessed RFC.

## 2. Substantial evidence supports the ALJ's assessed RFC with regard to the physical limitations

Franklin argues that the ALJ did not include certain physical limitations in the assessed RFC. Pl. Mot. Summ. J., pp. 7-10, ECF No. 17.

### a. The ALJ considered and included some physical limitations in the assessed RFC

Franklin asserts that the ALJ's assessed RFC fails to include any of the four severe impairments that the ALJ found at Step Two: ischemic heart disease with chest pain on moderate exertion, coronary artery disease, degenerative disc disease, and status post anterior cervical decompression and fusion. Pl. Mot. Summ. J., p. 7, ECF No. 17.[9] This argument is without merit.

In formulating the RFC, the ALJ considered these severe impairments, along with Franklin's symptoms, the objective medical evidence, the medical opinions, and Franklin's testimony, to evaluate Franklin's ability to work *despite* these limitations. R. 17-20; *see Ventura*, 2017 WL 1397130, at *12; §§ 404.1545(a), 416.945(a). Franklin's assessed RFC included limitations related to both the heart and artery diseases and the neck and back impairments. The ALJ limited Franklin to light work and being able to sit/stand/walk intermittently for six hours each,

---

[9] Franklin cites and quotes from *Stone*, 752 F.2d 1099 in support of his position that the impairments should have been included in the assessed RFC. However, *Stone* focused on Step Two and whether the ALJ properly evaluated whether a claimant had a "severe" impairment, not whether the impairment should have been included in the assessed RFC before reaching Step Four. *Id.* at 1100.

only performing jobs with occasional crouching, crawling, kneeling, and climbing of stairs, and not performing jobs with scaffolding, ropes, or ladders. R. 17-20. The light work incorporates Franklin's heart and artery impairments while the added limitations incorporate the heart, artery, neck, and back impairments.

To the extent that the ALJ did not include more limitations related to Franklin's neck and back, the ALJ's assessed RFC is supported by substantial evidence.

Although there is evidence that Franklin had pain in his neck and back, there is no objective evidence that Franklin was more limited than what the ALJ assessed as Franklin's RFC. Dr. Sahi, a physician that DARS hired to conduct a one-time consultative examination, examined Franklin in April 2013, and Franklin complained of neck, back, and shoulder pain. R. 384. During a physical examination, Dr. Sahi found that Franklin was positive for extremity and back pain. However, when Dr. Sahi examined Franklin, he found that Franklin had no spine or costovertebral angle tenderness, and Franklin was able to do various maneuvers, including squatting and rising from a squat position and bending and touching his fingertips within three inches of the floor without difficulty. R. 386. He also found that Franklin was not suffering from any neck pain. R. 385. On

January 8, 2014, Franklin underwent a physical examination at Kingwood hospital and had full range of motion in his neck and back. R. 470.

Additionally, Franklin's own statements about his pain and his ability to do work support the assessed RFC. Regarding his neck and back pain, Franklin testified that medication helped him manage his pain and he refilled his prescriptions. R. 41-42, 436; *see Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (ALJ can consider that medication alleviated pain); *Willis*, 2017 WL 1153956, at *17 ("an impairment that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC."); *Ventura,* 2017 WL 1397130, at *8 (same). Moreover, Franklin testified at the hearing that he was able to lift and carry between thirty to forty pounds, R. 38, and had no trouble taking care of his daily needs. R. 219; *see Ventura,* 2017 WL 1397130, at *9 (relying on the claimant's daily activities as evidence to support the ALJ's assessed RFC). The ALJ discounted Franklin's testimony in assessing that he could lift 30-40 pounds in assessing that he had an RFC to perform light work.

Accordingly, substantial evidence supports the ALJ's decision not to include any more of a limitation than what was included in the assessed RFC related to Franklin's neck or back movement.

*b.    Substantial evidence supports not finding any right-hand grip manipulations limitations in the assessed RFC*

Franklin argues it was error for the ALJ not to include a limitation in the assessed RFC related to his decreased grip strength in his right hand. Pl. Mot. Summ. J., p. 8, ECF No. 17. Substantial evidence supports the ALJ's decision.

In April 2013, Franklin told Dr. Sahi that he had problems with gross manipulations, like opening a jar top. R. 384. During an examination, Dr. Sahi found that Franklin had slightly decreased grip strength in his right hand. R. 389. Other than this isolated piece of evidence of a slight limitation, the record is devoid of any other medical findings that support Franklin's contention. *See Soto v. Colvin*, No. 13-CV-28, 2015 WL 6961754, at *4 (W.D. Tex. Nov. 10, 2015) (finding the ALJ's decision not to include a limitation in the RFC was supported by substantial evidence because the record did not include any objective evidence of the limitation); *Brown v. Colvin*, No. 4:12-CV-1849, 2013 WL 3779344, at *9 (S.D. Tex. July 17, 2013) (Johnson, J.) (concluding the ALJ's decision was supported by substantial evidence when the record was devoid of any medical finding other than the claimant's non-credible testimony).

To the contrary, the other evidence supports the ALJ's decision to not include any right hand manipulations in the assessed RFC. Dr. Sahi found that Franklin's grip strength was reduced to only 60% and there was no edema

(swelling) in his extremities. R. 19, 386, 389. An examination at Kingwood Hospital in January 2014 found no evidence of clubbing, edema, or cyanosis (discoloration in the skin as evidence of a lack of oxygen) in the extremities. R. 447. Dr. Sahi also opined that Franklin was limited to moderate lifting, R. 387, and Franklin testified that he could lift thirty to forty pounds, R. 38.

Moreover, the ALJ could take into account the fact that Franklin did not include this pain or any limitation in his hands in his disability application. R. 187; *see Ventura*, 2017 WL 1397130, at *11 (finding that the ALJ could consider that the plaintiff did not include anxiety as an impairment that was disabling in her application); *Quinn v. Colvin*, No. 4:11-CV-3629, 2013 WL 2458632, at *9 (S.D. Tex. June 6, 2013) (Hanks, J.) (finding that the claimant did not list shoulder pain as relevant in determining whether substantial evidence supports the ALJ's finding that the claimant did not suffer from a severe impairment at Step Two); *Castro v. Barnhart*, No. 05-cv-0830, 2006 WL 2290563, at *6 (W.D. Tex. Aug. 7, 2006) (noting that claimant did not allege depression as a mental impairment in her disability benefits application). Franklin failed to meet his burden and supply any other evidence that corroborated his pain, limitations, or treatment he received related to his right hand. *See Perez*, 415 F.3d at 461.

Accordingly, substantial evidence supports the ALJ's decision not to include any limitation associated with Franklin's right hand in the assessed RFC.

### c. Substantial evidence supports the assessed RFC finding that Franklin can stand and walk intermittently for 6 hours a day

Franklin asserts that it was error for the ALJ to assess Franklin's RFC as being able to stand/sit/walk for six hours a day because it is inconsistent with Dr. Sahi's opinion that Franklin can only stand and walk for "moderate distances." Pl. Mot. Summ. J., pp. 8-9, ECF No. 17.

The ALJ did not assess Franklin as having the ability to walk continuously for eight hours. Rather, the ALJ took into account Franklin's limitations in the assessed RFC and added the limitation that Franklin must be able to walk intermittently, i.e., have the ability to stop and change positions at irregular intervals. R. 17.

Dr. Sahi's opinion is consistent with Franklin's own statements, the SAMCs' opinions, and the other objective evidence. Franklin reported being able to walk from a quarter to a half a mile and stand and sit for thirty minutes. R. 39, 42, 384. The SAMCs both opined that Franklin could do work at a light exertional level. R. 55-59, 64-68, 77-80, 87-90. Franklin underwent an exercise stress test at Conroe Regional Hospital on October 17, 2012, which revealed an appropriate response to exercise, normal resting ECF, and normal functional capacity. R. 295.

When Dr. Sahi examined Franklin a year later, he found angina (pain in the heart) with moderate exertion, and that Franklin suffered from fatigue and chest pain. R. 386. After Dr. Sahi's examination, however, Franklin had a normal physical examination at Kingwood Hospital which revealed a normal heart rate and rhythm, normal heart sounds, and no pedal edema. R. 470. Franklin did not appear to be in any distress and had normal breath sounds with no wheezing. *Id.* Further, although a chest x-ray revealed mild cardiomegaly (an enlarged heart), there was no acute abnormality demonstrated, R. 472, and no vascular congestion, R. 485.

This objective evidence, along with Franklin's own statements, and the opinion evidence of Dr. Sahi and the SAMCs, support the ALJ's contention. Accordingly, the ALJ's assessed RFC finding that Franklin can walk and stand intermittingly for six hours is supported by substantial evidence.

Franklin argues that the ALJ should have contacted Dr. Sahi to obtain the precise meaning of "moderate." Pl. Mot. Summ. J., p. 9, ECF No. 17. An ALJ owes the duty to the claimant to "develop the record fully and fairly to ensure that [her] decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). There is no regulation that requires the ALJ to re-contact a consulting physician who conducted a one-time examination of the

claimant to clarify an opinion.[10] It was not error for the ALJ to fail to contact Dr. Sahi about this opinion because, the record was adequately developed. The ALJ had the objective medical evidence that Dr. Sahi relied on to form this opinion, including Franklin's ability to do various maneuvers and Franklin's heart diagnoses. R. 384.

## V.   CONCLUSION

For these reasons, the Commissioner's motion for summary judgment is **GRANTED**, and Franklin's motion for summary judgment is **DENIED.** Franklin's claims are **DISMISSED with prejudice.**

Signed on August 23, 2017, at Houston, Texas.

_Dena Palermo_
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[10] There is an older regulation that required the ALJ to recontact a treating physician, psychologist, or other medical source to clarify an opinion or other evidence in certain circumstances. 20 C.F.R. §§ 404.1512(e), 416.912(e). Both of these regulations were amended on March 26, 2012 and were not in effect at the time of the hearing and decision. The revised versions do not contain this subsection. This older regulation would not have applied here because Dr. Sahi was a consulting physician, not a treating physician, who examined Franklin once, at the request of DARS. Social Security Ruling 96-2P also suggests that, in evaluating whether to give a *treating physician* controlling weight, an ALJ may be required "to obtain more evidence or to clarify reported clinical signs or laboratory findings" when the treating physician's findings are inconsistent with the other evidence. SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996). But further development is not required when the record is otherwise adequately developed. *Id.* The ALJ was not required to contact Dr. Sahi under this ruling because Dr. Sahi was not a treating physician and the record was otherwise adequately developed.